IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES MCASSEY | : CIVIL ACTION |
| | : |
| v. | : |
| | : |
| DISCOVERY MACHINE INC., ANNA GRIFFITH, TODD GRIFFITH, MOLLY LUSK, HOWARD LEWIS and VANESSA CHAPLA | : NO. 16-0882 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                  **April 18, 2016**

The defendants have moved to transfer this employment discrimination action to the Middle District of Pennsylvania where the plaintiff's employment was based, his former employer is headquartered, and three of the five defendants reside. Opposing the transfer, the plaintiff argues the case should remain in the Eastern District where he resides and performed some of his work.

After weighing all relevant factors, we conclude that the balance tips in favor of transfer. Therefore, the defendants' motion to transfer will be granted.

### Background

James McAssey was the Vice President of Business Development for Discovery Machine, Inc. from June 2010 to May 2015.[1] Although he lived in West Chester, Pennsylvania, his employment was based at Discovery Machine's headquarters in Williamsport, Pennsylvania, where the company maintained an apartment for him and

---

[1] Compl. (Doc. No. 1) ¶¶ 20, 22.

other employees.[2]  McAssey spent several days each month there.[3]  He also traveled extensively outside Pennsylvania as part of his business development responsibilities.[4]

According to McAssey, he was repeatedly harassed during his employment.[5] He alleges that Anna Griffith, an owner and CEO of Discovery Machine, and four fellow employees subjected him to a hostile work environment.  He claims his employment was terminated based on his sex and disability in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Pennsylvania Human Relations Act.[6]  In particular, he claims Griffith propositioned him sexually and requested to stay at his West Chester home during two business trips.[7]  He was terminated several weeks after he refused her second request.[8]

Three of the five individual defendants, including Griffith, reside in the Middle District of Pennsylvania.  Two defendants reside in North Carolina.[9]  McAssey continues to reside in the Eastern District.[10]

## Legal Standard

A defendant moving for transfer of venue bears the burden of demonstrating that (1) the case could have been brought initially in the proposed transferee forum; (2) the

---

[2] Mot. to Transfer (Doc. No. 10) at 3; Resp. (Doc. No. 14) at 2.

[3] Resp. at 2.

[4] *Id.*

[5] Compl. ¶¶ 25, 29.

[6] *Id.* ¶¶ 32, 36, 41.

[7] Resp. at 2.

[8] *Id.* at 2-3.

[9] Compl. at 5; Mot. to Transfer at 3.

[10] Resp. at 3.

proposed transfer will be more convenient for the parties and witnesses; and (3) the proposed transfer will be in the interest of justice. 28 U.S.C. § 1404(a); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Once the defendant establishes that the action could have been brought in the proposed district, the court must weigh several private and public interest factors to determine whether the balance of convenience tips in favor of transfer. *Jumara*, 55 F.3d at 879-80.

Among the factors considered when determining whether transfer is more convenient for the parties and in the interest of justice are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) the place where the claim arose; (4) the relative ease of access to the sources of proof; (5) the convenience of the parties as demonstrated by relative financial status and physical location; (6) the availability of compulsory process for the attendance of witnesses; (7) the convenience of the witnesses; (8) the practical problems that make trial of a case expensive and inefficient; and, (9) "public interest" factors, such as congestion of court dockets and the relationship of the jury and the community to the underlying district. *Jumara*, 55 F.3d at 879-80. Depending on the nature and the facts of the case, these factors overlap and are intertwined.

Because the analysis involved is "flexible and individualized," the district court has broad discretion in deciding a motion for transfer of venue. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Despite this wide latitude, a transfer motion is not to be granted without a careful weighing of factors favoring and disfavoring transfer. *See Shutte*, 431 F.2d at 24-25.

**Analysis**

Only if the action could have been brought in the Middle District of Pennsylvania can it be transferred there. Thus, the threshold question is whether that district is a proper venue.

There are three possible venues: (1) where all defendants reside in the same state, the district where any defendant resides; (2) the district where a substantial part of the events or omissions giving rise to the claim occurred; and (3) in the case where there is no other district in which the action can be brought, the district where a defendant is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(b).

A substantial part of the events happened in the Middle District of Pennsylvania. Because McAssey was employed, harassed, discriminated against and terminated in the Middle District of Pennsylvania, the action could have been brought there.

The inquiry now turns to weighing the private and public interest factors to determine which forum is more convenient for the parties and the witnesses, and will serve the interest of justice.

*(1) The plaintiff's choice of forum*

The plaintiff's choice of forum typically receives "paramount consideration." *Shutte*, 431 F.2d at 25. However, it is not controlling. The plaintiff's choice may be outweighed by other interests weighing in favor of transfer. *Id.*

McAssey's choice of forum weighs against transfer. In balancing the other interests, we shall give strong deference to his choice.

*(2) The defendant's preferred forum*

The defendants prefer the Middle District of Pennsylvania because Discovery Machine is headquartered there and three of the five individual defendants reside there. Hence, the defendant's preferred forum favors transfer.

*(3) The place where the claim arose*

Where the claim arose implicates other factors in the analysis. It involves questions of access to proof, choice of law, convenience of the parties and the witnesses, availability of witnesses, and efficiency concerns. Thus, determining the place where the claim occurred will inform the evaluation of these other factors.

The decision to terminate McAssey was made in the Middle District. All documents related to his employment are maintained at Discovery Machine's offices in that district.[11] All but one of the potential employee witnesses work in the Williamsport office.[12]

McAssey claims some of the harassment occurred in the Eastern District.[13] He refers to four potential witnesses who are not employees of Discovery Machine and reside in the Eastern District.[14] He does not identify them or specify the subject matter of their testimony.[15]

Because McAssey's employment was based in the Middle District and he was terminated there, this factor weighs in favor of transfer.

---

[11] Mot. to Transfer at 2.

[12] *Id.* at 3.

[13] Resp. at 3.

[14] *Id.*

[15] *Id.*

*(4) The relative ease of access to the sources of proof*

The documents related to McAssey's employment are located in the Middle District. The records relevant to his performance and the alleged harassment are there. Witnesses to McAssey's job performance and his treatment during his employ at Discovery Machine are in Williamsport. This factor favors transfer.

*(5) The convenience of the parties as demonstrated by relative financial status and physical location*

McAssey claims it would be a financial hardship for him to travel to the Middle District.[16] The cost of travelling from his home to Williamsport or Harrisburg is not significant. It is a 146-mile drive to the Williamsport court house and 81 miles to the Harrisburg court house.[17]

The Middle District is more convenient for the defendants. Four of the five individual defendants work in Williamsport. Three of them reside there. The distance from their workplace to the court house in Philadelphia is 179 miles.[18]

Discovery Machine likely has a greater ability to absorb travel costs, but its burden would also be greater due to the number of defendants. The cost to McAssey to travel to either Williamsport or Harrisburg is not significant. In weighing these considerations, this convenience factor weighs slightly in favor of transfer.

---

[16] *Id.*

[17] Driving Directions from McAssey's Home to Williamsport and Harrisburg Courthouses, Google Maps, https://www.google.com/maps (follow "Directions" hyperlink; insert starting point and destination; and search).

[18] Driving Directions from Discovery Machine's Headquarters to James A. Byrne Courthouse, Google Maps, https://www.google.com/maps (follow "Directions" hyperlink; insert starting point and destination; and search).

*(6) The availability of compulsory process for the attendance of witnesses*

This factor is neutral. Neither side argues that non-party witnesses would be subject to compulsory process in one district but not in the other. We cannot determine if witnesses may be required to travel more than 100 miles if this case remains here or is transferred.

*(7) The convenience of the witnesses*

With the exception of one defendant, all employees of Discovery Machine who are potential witnesses work in Williamsport.[19] The defendants have not identified any non-party witnesses. McAssey mentions four potential witnesses who reside in the Eastern District. He does not proffer what testimony they would provide.[20] He also argues that "over two dozen" customers, potential customers, and partners of Discovery Machine reside outside both the Middle District and the Eastern District.[21] He claims it would be more convenient for them to travel to the Eastern District, which has a major airport, than to the Middle District.[22] Without knowing who these witnesses are and whether they could offer relevant testimony, we cannot determine which forum would be more convenient for them. Thus, because most of the known witnesses reside and work in the Middle District, the convenience of the witnesses favors transfer.

*(8) The practical problems that make trial of a case expensive and inefficient*

There will be some inconvenience to at least some parties and witnesses regardless of whether the action is transferred. Trying this case in the Middle District,

---

[19] Resp. at 3.

[20] *Id.*

[21] *Id.*

[22] *Id.* at 4.

where McAssey's employment was based and most of the defendants and witnesses reside, would be more efficient than resolving the case here. Thus, this factor runs in favor of transfer.

*(9) The "public interest" factors*

The Middle District has a significant interest in having this dispute, which involves three of its residents and one of its businesses, resolved there. The Eastern District has less interest in this case because although McAssey's resides here, his employment was based in the Middle District.

In recent years the Eastern District has been more congested than the Middle District, *see A.S. ex rel. Miller v. SmithKline Beecham Corp.*, No. 13-3684, 2013 WL 4401352, at *2 (E.D. Pa. Aug. 16, 2013), but this situation has changed. In the twelve-month period ending June 30, 2015, the caseloads have shifted.[23] However, there are two vacancies in the Eastern District and none in the Middle District.[24]

Because the Middle District has a significantly greater interest in resolving this case, we conclude that the public interest factors weigh slightly in favor of transfer.

## Conclusion

The balance of private and public interest factors weigh in favor of transferring this action to the Middle District of Pennsylvania. Therefore, in the interest of justice, the motion to transfer venue will be granted.

---

[23] *See U.S. District Courts Combined Civil and Criminal Federal Court Management Statistics (June 30, 2015)*, *available at* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-1 (last visited April 18, 2016).

[24] *Current Judicial Vacancies*, http://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last updated April 18, 2016).